Good morning. May it please the Court. Mark Carlin for the Appellant and Anne Way Cao. I'll be very brief in my remarks today. The issue is, can an agency of the U.S. Government be held liable for holding in deportation proceedings a U.S. citizen, a person who derived U.S. citizenship from his parents? It looks to me like this is different from the other Federal Tort Claims Act subsection H case we had. In this one, I don't see why they had to let him go unless they had to take his word for it that he had been naturalized. And it seems obvious that people managing a prison or police don't have to take criminals' word for it that he's a naturalized citizen. I don't know much about the other case from what I could derive from the oral argument. This is a little bit different. In that longer period of time, and I would agree with you, Your Honor, that when my client first says to the Immigration Service, no, I'm a U.S. citizen because my father was naturalized before I was 17, they don't have to take his word for it and release him. However, the facts will show that it was a long series of interactions, both with the Immigration Service, with Immigration Counsel, with the Immigration Court, from the first date that my client mentioned that he was a U.S. citizen through derivative citizenship until, I think it was about 15, 16 months, until he was actually released. I have the problem that it's in the judicial process litigating the very issue, and the immigration judge ruled against the claim as part of this process. And then, I gather, you or somebody was brought in and finally persuaded INS to change its legal position. So, when do you count? When does the tort begin, and who's guilty of it? I'm saying it's on the date that the immigration judge ordered him removed, that he denied the claim of U.S. citizenship. And let me, if I can explain this. You're saying it's the date the IJ ruled against Cal? Right. I think it was November 2000, Your Honor. The basis is that, I believe, the Immigration Service took the position that, legally, Mr. Cal was incorrect because both his parents had not been naturalized prior to his 18th birthday. And this, from my understanding, was one of my associates who did represent him at the Immigration Court, not myself. But this position of the Immigration Service continued up until November 2001, which is contrary to the law. It was also contrary to a service bolden that the, I believe, the headquarters of the immigration litigation had sent out to various district offices. So it's our position, because the Immigration Service took a very hard position, that my client legally had not met the requirements of veritable U.S. citizenship. But doesn't your case come down to the fact that the immigration judge made a mistake? Well, Your Honor, on first glance, it appears that this is a case that you can lay, if you would, blame on the immigration judge. Well, the immigration judge has the authority to make the decision. Correct. And so he is the one who can or cannot make a mistake. Who else can make a mistake that has, you know, consequential effect? I understand, Your Honor. The Immigration Service could correctly set forth the law, could correctly brief the law to the immigration judge. This is a little bit different than, I mean, my analogy would be, Your Honor, and I use this in the district court, would not hold a district attorney. Then their liability is not based upon holding the plaintiff against the law, but their liability is based upon making an incorrect argument, sort of like malpractice. In a sense, Your Honor, or presenting incorrect explanation of the law, incorrect briefing. Can you hold the government for a malpractice by one of its lawyers? Your Honor, I haven't seen an analogous case here in the Ninth Circuit. Isn't that what you're trying to do? In a sense, yes, Your Honor. Boy, would that be a lot of exposure every time an AUSA comes in here and makes an argument that we buy and we were wrong. No, I understand. It's a unique case, Your Honor. I'm not going to downplay it. This is a very unique case. So you have no case that directly supports your position? No. I don't think either side, either appellee or the appellant, could find any case. Obviously, I've heard the last hour and a half of you discussing the intricacies of various holdings. I wish there were in any circuit, and it just hasn't been discovered, where you have such a position like this, where you have someone with derivative citizenship, and there's legal arguments either way. But it's our position that my client was put in custody on the request of the Immigration Service. The Immigration Service, unilaterally, could have made a decision or could have recommended to the Immigration Judge that he, in fact, was a U.S. citizen. In fact, that's what eventually happened. There was a joint motion to terminate with my associate and the Immigration Service. When the Immigration Service finally realized that its interpretation and presentation to the Immigration Judge had been incorrect. Why is this any different from a case, just a routine criminal case, where the District Judge issued a judgment and conviction order and a sentence, and then on appeal, we say that there was insufficient evidence or it was an illegal sentence or any of the many grounds that would terminate the case, not just remand it for another trial, and say the person gets out of jail right now and he should never have been in jail. It seems like, under your theory, there would be a Federal Tort Claims Act action that would be good in every one of those cases. Well, I think a little bit differently, a little bit different shade on this, Your Honor. I'd say that would be analogous to a case where the government withholds certain evidence or withholds certain information from the District Court. That's the situation, I believe, where there are grounds to Like not telling us some authority that was in point? Well, not only that, Your Honor. He's asking them the, I think the Immigration Court's a little bit different than the District Court, where they give great deference to the service and the service's interpretation of its own rules regarding citizenship or its own regulations. It's a little bit different than if you had a garden variety case where this court overturns a District Court on a criminal conviction. In a sense, there was, I think the Immigration Court in this case asked for briefing from the service, asked an interpretation from the service with regard to whether my client had derived U.S. citizenship and the service was strident that he had not. When, in fact, the court said it was not only in opposition to the regulations, but its own service both. So I understand the analogy, Your Honor, but I think it's a little bit of a shade different in that the Immigration Service provides crucial information, if you would analogous to evidence. Sounds like the only difference is there's more IJs or more deferential to the INS lawyers than we are to AUSAs. Well, I don't know about that, Your Honor, but it's in a sense that he's asking them for an interpretation of their own. In this case, the IJ asked the immigration attorney for an interpretation of immigration regulations and their own immigration procedures. Nothing unusual about that. You've just heard us ask numerous lawyers before you, well, what is your position?  Sure. At some point, I guess it's around May or March, rather, of 2001, your firm then briefs the INS. Correct. And at that point sets the wheels in motion that ultimately led them to change their mind. So what in the landscape, assuming that November takes it back too early in the process, what's the significance of the March brief? As you could argue, I guess it would be reasonable for the Immigration Service and the IJ when dealing with a pro se detainee, maybe he didn't present the most articulate case. But your Honor makes a very cogent point. Around March of 2001, my associate does come into the case, fully briefs the position that was eventually accepted, that my client did have derivative citizenship. So at that time, even in the face of clear and convincing legal arguments, or rather interpretation of the INS law, the INS, at that time the INS, continued to be frightened that my client did not have derivative citizenship. So that's another, I think March to November of 2001, another approximately six-month period. Only when there was an appeal to the Board of Immigration Appeals, and there was also an emergency bond hearing that was brought in October, November of 2001, did someone up the chain of command, someone review this at the Immigration Council and agree that, in fact, my client did have derivative citizenship. So the IJ had the correct factual and legal information, and he just made a wrong decision, and your client was held pursuant to the wrong decision? Well, based on the advice and consent, if you would, and that's not really the correct term to use, but based on the advice and consent of the Immigration Council, yes, Your Honor. We don't submit our decisions for the advice and consent of lawyers on either side. I understand, Your Honor. But your argument appears to be that the INS lawyers have a duty to fairly investigate the facts and follow the INS regulations and advise the immigration judge of their error if they made a defensible mistake of law or fact in November. By March, your position is that there was no more excuse for that and that it was unconscionable for them to wait six months before they finally recognized what they should have recognized from the beginning. Yes, Your Honor, that is my argument. And especially since the INS is the agency in charge of determining who is a citizen and issuing certificates of citizenship. So it's a little bit different than, if you would, a criminal court where the ultimate adjudicator or the ultimate adjudication function falls to the court. In this case, the INS, and I point this out in our brief, it's under the federal regulations, the INS, in this case, issues the detainer. It's not a criminal warrant that's issued, much like in the criminal case. Also, the determination of whether someone has derived citizenship is determined by the INS and the issue of certification of citizenship is decided by the INS. That makes it a little bit different. That takes it, if you would, a little step to the side of a garden-variety criminal case. I see I have three minutes left, and there are some questions I'd like to reserve some time for rebuttal. Thank you, counsel. May it please the Court? My name is Erica Johnson Brooks, and I represent the United States. Your Honor, Appellant has mischaracterized this entire case. The dates he alleges that he was falsely imprisoned by the INS do not coincide with his actual physical INS custody. Appellant has stated before this Court, and he would have the Court believe, that he was in physical INS custody, being falsely imprisoned from November 15, 2000, through November 8, 2001. However, on November 15, 2000, Appellant was still serving his criminal sentence. He did not enter INS custody until February of 2001. And then in September of 2001, not November 8, 2001, he was released from INS custody. So essentially, the dates that Appellant has selected, November 15, 2000, the date of the IGA decision, rendering him removable as an aggravated felon, and the BIA decision, which is the November 8, 2001 date, which granted the party's joint motion to terminate, he is essentially trying to use an FTCA claim to challenge an immigration judge's decision. Well, what he's – so you've shrunk the allegedly false imprisonment time when he is in custody, and I tried to summarize my understanding of his argument, which is that he was held pursuant to an IJ's ruling, but it's pursuant to the legal and factual arguments of the INS, and that if, as they're alleging, in February 2001, the INS should have, or certainly by March, realized it had made absolutely incorrect arguments, did it not have a duty to go to the IJ and dismiss the complaint? Or could they just sit on their hands and say, well, too bad, but unless he is able to now persuade the IJ that we were wrong, even though we admit we're wrong, no liability. A couple of points, Your Honor. First, in February of 2001, Appellant was represented by counsel. And again, I believe that this is a case where Appellant is trying to circumvent judicial immunity by blaming it on what the INS determines. Well, I understand he's trying to – he has to get around judicial immunity or it wouldn't work. What he's saying is the INS, as lawyers, as the agency that determines citizenship, becomes – let's just assume, and I don't know what the record actually shows about what went on inside the halls of the INS, but they say, oh, my God, we made a mistake. He is absolutely right. And the supervisor says, well, we're not going to go public with that, so too bad. So we just – he sits there. And then the burden is on him, and yet when push comes to shove and he asserts his rights, the INS then says, okay, we give up. But they knew they should have given up six months earlier. Why isn't that a violation of their duty to fairly prosecute the cases and bring about an initiative that then gives the IJ the basis on which to dismiss and reverse – reverse and then dismiss his ruling? Your Honor, certainly in this case, eventually the INS attorneys did do this and say, you know, they did the right thing and joined in a motion to terminate the proceedings. However, at the time – and I'm just going to go back a little bit. At the time, Your Honor, there were several misrepresentations to the court by appellant. For example, when he was placed in removal proceedings. This is – I'm aware of that. I'm accepting all of that. My – I'm trying to zero in so I understand his theory. And whether the facts coincide entirely, I'm not quite sure. But is that whatever went on before, by March 2001, the INS now, with all of the facts and the – forget the misrepresentations that he made early on, now as of March 2001, they say, okay, you are right. We agree with you. He should be given derivative citizenship. We now understand the custody arrangements. We understand all of that, physical, legal custody, so on and so forth. But they don't do anything about it. They just leave him in custody, keep him in custody until eventually they react to a legal action then taken by the petitioner to say, look, they're not going to admit their mistakes, so now I've got to go to the BIA or the IJ and try and get it reversed. And then you throw up your hands and say, okay, we concede. So what's the duty of the INS in that interval? Well, Your Honor, and the reason that I pointed out the correct date is that in February of 2001, when he is represented by counsel, as I stated earlier, the INS did eventually do the right thing and joined in the motion to terminate. However, that did not – Why did it take six months? Your Honor, again, you know, I am not certain as to why it took six months, but I don't believe that that should trigger an FTCA claim. By that I mean the judge, the immigration judge in this case, made an independent statutory interpretation of a statute. Based on what the INS argued to it. And the judge – You refuse to address the issue that I'm trying to get you to address. Granted, the IJ's ruling gives – He's entitled to judicial immunity, and to the extent I think that the INS is litigating in good faith, we have the EJA fee shifting, and whether the government's taking a reasonable litigation position. All of that kind of rubric I understand. The hypothetical, and maybe the reality here, is that the lights dawned on somebody, an INS lawyer, that they had argued and procured an erroneous decision from the IJ. They now know it was an erroneous judgment on the part of the IJ. They are the only ones, unless the petitioner does it, can tell the IJ, because the IJ isn't looking at this case anymore, we want you now to reverse your ruling because we confess error. The government comes in and confesses error a lot of times when it finds out that the facts are wrong or that things are different, and we will act on that. So why doesn't the INS legal staff have a responsibility to confess error at the time it knows it has made the error, rather than wait six months, and I'm assuming it knew it in March. That may be a fact dispute, but that they knew in March that they had made an erroneous argument and this person should be released. Your Honor, again, pursuant to the statute, I don't believe that it was clear that they had in fact made any kind of erroneous argument because the judge looked at a statute and made an interpretation based on the fact that it allowed some interpretation, that there was an issue as to joint legal custody. When did the INS decide that it would no longer oppose release from custody? Your Honor, it was in September of 2001 when he was released from custody, and then at that point, and also, Your Honor, he was already in removal proceedings. The INS cannot come before the IJ and say hypothetically that they were wrong. That has been, if you notice, the BIA's decision on November 8, 2001. It still has to be a formal adjudication by, I guess, a judicial. Well, I don't know if this is really answering the question. I think if I'm understanding the question that Judge Fischer is putting to you, suppose hypothetically an INS lawyer tells his boss on date one, we're wrong, this guy's a U.S. citizen, we cannot detain him. His boss says, don't put it in writing, I don't want to hear it, let it lie. Six months later at date two, after a compelling brief has come before the BIA, the boss says, hey, you remember what you told me? Well, let's confess error now so we look good to the BIA. So the guy gets out. During that six months between date one and date two, assuming that there was discovery and this conversation was discovered, is there liability, is that INS lawyer a law enforcement officer, under the exception to the exception in 2680? Is there liability because as a law enforcement officer, he caused the detention of the individual during that six months when he knew it was wrong? Your Honor, those are not the facts of this case. I didn't ask you if they were the facts of this case. I gave you a hypothetical. That means it's not the facts of this case. Your Honor, and I'm going to answer your question given the hypothetical. In that case, Your Honor, I do not know if that would trigger an FTCA claim. It might trigger a constitutional claim. It may trigger other claims. But it does not, in my view, trigger an FTCA claim. Why? Well, Your Honor, I guess there would have to be some sort of ---- There's an exception to the false imprisonment exception for law enforcement officers. And there seems to be some law that at least some INS personnel are law enforcement officers. So I guess it's a question for me if that lawyer is a law enforcement officer, maybe the exception to the exception applies. And there is federal tort claims liability for false imprisonment. So I'm giving you a hypothetical just so that my area of inquiry can be clear to you. I understand. And I know of no case that would subject an attorney, I guess, subject to liability under the Federal Tort Claims Act for, I guess, in your case, which is more egregious, for sitting on information that they should have known to or the judge should have known that would set some person or not imprisonable. I would subject the United States to liability for false imprisonment because of the act of a law enforcement officer. Right. In my hypothetical. Right. And I know of no case, Your Honor, that has ever ---- Is there a case going the other way? ---- that has ever done that. Other than the cases that were cited that when an attorney is making good-faith arguments to a court and that the judge ---- It's hypothetical. It's bad faith. Bad faith. And I know of no case that goes that way as well, Your Honor. The government's argument is that in this case, the government did the right thing eventually. And the fact that, yes, early on in the process, and I guess we've already talked about the appellant's misrepresentations and how we got to the point of why there was confusion over whether or not he was a citizen. But, again, judicial immunity, you know, this case goes to the heart of judicial immunity. The judge looked at the briefs, looked at the statute, made an interpretation based on, you know, you can look at the divorce decree and see that the divorce decree grants joint legal custody. And he looked at the statute and said, since this divorce decree grants joint legal custody and the statute says that in that case both parents would have had to naturalize by appellant's 18th birthday, therefore he is not a citizen, you know, I don't ---- I do not believe that the INS attorney in this case should be subject to FTCA or be subject to tort liability for making the arguments and then before the court and the court made his decision with respect to judicial immunity. Is the INS attorney a law enforcement officer under 2680? No, Your Honor. He has no power to make arrests? No, Your Honor. In this case, no. What do you mean in this case? Well, I'm sorry. In ---- He would have no ---- Can INS attorneys make arrests? INS attorneys do not make arrests. I didn't ask you if they do. I asked you if they can. No. You sure of that? We can. I have thought, Your Honor, I have thought ---- Did you know that judges can make arrests? They can't. Well ---- You better be careful. And he's got a gun. Your Honor, and also I just ---- I also want to add that with respect to the district court's entry and summary judgment on all the claims that government argues that those claims should be affirmed because there are no genuine issues of material fact based on this court's decision in Armsburg, which protects judicial immunity. And in March of 2000, when appellant was in removal proceedings, the judge has the authority to determine whether or not, in this case in particular, he derived citizenship through the naturalization of his father. And the judge determined that he had not. And later on, excuse me, later on, the INS joined in a motion to terminate the claim. And he was released from custody. And the fact that they could have is speculative. And they could have done it sooner does not trigger an FTCA claim. If the court does not have any more questions, I will conclude. Thank you, counsel. Just one brief remark. And I think the court touched on it when it's hypothetical. And also a comment by appellee's counsel that eventually the Immigration Service did the right thing. That is really, and Judge Fischer brought this out in his questioning of me, there is a, we would raise a probably sure fact whether they did do, in fact, the right thing. And one of the items I submitted to the district court was an INS bulletin to its offices, and it's in the appellate record. I think it was in 97-98, which explained how district directors, officers of Immigration Service are to determine whether someone has obtained derivative citizenship. And it went right to this bulletin, right to the issue of parental custody. And according to the INS's own interpretation, that section of the law, 321A, did not require sole or exclusive custody. Okay, so he made an error of interpretation. So how does it come within, how do you bring your case into the kind of hypothetical Judge Kleinfeld posed, where there is essentially bad faith or egregious behavior on the part of the lawyer? And then how do you get around, how do you bring yourself within the exception to sovereign immunity? The exception, Your Honor, we have cited a case that INS officials who make determinations whether someone should be detained, not admitted to the United States, et cetera, can be held responsible under that false imprisonment tort claim exception. But my position is that there's a reasonable question of dispute whether or not the INS in this case acted reasonably or unreasonably, good faith and bad faith. Unless there's some other questions. I have two other questions. Sure, Your Honor, of course. I asked hypothetical questions in order to clarify some issues. On this one, it looks to me as though while you were right, it wasn't so obvious that you can definitely say any INS lawyers were acting in bad faith. Why am I wrong on that? Well, we don't know, Your Honor. This was an early summary judgment. Discovery had not really passed the court. Okay. That leads to my next question. Suppose we had the rule that when an INS lawyer in bad faith fails to present evidence or argument to the IJ that would lead to the release of the petitioner or defendant that federal tort claims liability attaches. It seems like we would need the district courts to allow discovery so that you could ask the INS lawyers, produce all your memos, produce all your e-mails, and then depose them. So when you ran into so-and-so on the way to the men's room and you talked about this case, what did he say about it? It's hard to see how people could practice law and supervise lawyers with that kind of discovery available. No, I understand that. Obviously, there's a big conflict with privilege and other non-judicial immunities. I understand that, Your Honor. That wasn't, to be frank, wasn't something that we discussed either at the district court or in our briefs, but I do understand that. I don't see how you can avoid it if we accept your rule. Well, I think we have at least a trial issue on discovery. How do you show good faith or bad faith if you can't do that discovery? Well, I think that we would have to do some discovery, much like a plaintiff could do discovery against the L.A. So you could do discovery. Isn't it true that you ran into your supervisor in a men's room and you told them, you know, this Cal case is a loser. The kid is right. He really is a citizen? Well, I think on any false imprisonment case against a prosecution agency, say, L.A. County District Attorney, I'm not that versed in those kinds of cases, but I do believe there is a certain right to civil discovery. Well, there it's usually police where you get all the discovery, not the prosecutor. Right. Now, that leads to my next question. Sure. What case says that the INS lawyers, as opposed to various other INS officials, what case says that the INS lawyers who argue these cases to IJs are investigative or law enforcement officers for purposes of 2680H? There isn't one that either myself or the appellant have found, or appellee, rather, have found, Your Honor. So I'm not, unfortunately, and I wish there were, I'm not aware of any. Well, is it your argument that they fit within the proviso? Exactly. How do they fit within? Because they do have, I think there is a proviso that, I don't know if they have powers of arrest, I can't, I'm not expert on that. It says empowered by law to execute searches, to seize evidence, or to make arrests for violations. Well, they have, I think, authority to make recommendations about whether to detain someone, whether to admit someone. Well, that's not what it says. It says to execute searches, to seize evidence, or to make arrests for violations of Federal law. I don't know about that, Your Honor. I haven't found a case to that effect. Well, it's not a case. It's, I mean. It's words of the statute. Right. I have not found a case which rules that INS attorneys come within the purview of that exception. So if they don't, then you don't have a case? Well, and not in false appraisal, no, Your Honor. Okay. And that's what you brought? Correct. Okay. Thank you. Thank you. Thank you, Counsel. Cal versus United States is submitted.
judges: Kleinfeld, Tashima, Fisher